IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA LYNN REUSEL, | ) | Case No. 5:20-cv-1291 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | THOMAS M. PARKER |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

Plaintiff, Cynthia Lynn Reusel, seeks judicial review of the final decision of the Commissioner of Social Security, denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act.  This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and the parties consented to my jurisdiction under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  ECF Doc. 9.  Because the Administrative Law Judge ("ALJ") applied proper legal standards and reached a decision supported by substantial evidence, the Commissioner's final decision denying Reusel's applications for DIB and SSI must be AFFIRMED.

**I.     Procedural History**

Reusel applied for DIB and SSI on November 29, 2016.  (Tr. 231-41).[1]  Reusel alleged that she became disabled on June 2, 2015, due to: "1. Chronic back pain; 2. Spinal canal stenosis; 3. Buldging [*sic*] discs; 4. COPD; 5. Asthma; [and] 6. Limited systematic sclerosis."  (Tr. 231,

---

[1] The administrative transcript is in ECF Doc. 15.

239, 264). The Social Security Administration denied Reusel's applications initially and upon reconsideration. (Tr. 80-159). Reusel requested an ALJ hearing. (Tr. 185-86). ALJ Reuben Sheperd heard Reusel's case on May 1, 2019 and denied the claims in a May 30, 2019 decision. (Tr. 12-79). On May 18, 2020, the Appeals Council denied further review, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). On June 12, 2020, Reusel filed a complaint to obtain judicial review. ECF Doc. 1.

## II. Evidence

### A. Personal, Educational, and Vocational Evidence

Reusel was born on December 1, 1975, and she was 39 years old on the alleged onset date. (Tr. 231, 239). She had a 12th grade education. (Tr. 265). Reusel had past work experience as a merchandise displayer, laboratory tester, housekeeper, and presser. (Tr. 28, 72-73, 266).

### B. Relevant Medical Evidence & Reusel's Hearing Testimony

In his written decision, the ALJ exhaustively summarized the relevant medical evidence and Reusel's hearing testimony. *See* (Tr. 19-25). Reusel does not challenge the ALJ's summary of the medical evidence or submit new evidence. *See generally* ECF Doc. 16; ECF Doc. 18. And independent review does not reveal any material inconsistencies between the ALJ's summary of the facts and the record before this court, other than those specifically discussed below. *Compare* (Tr. 19-25) *with* (Tr. 36-70, 319-1481). Thus, the court adopts and incorporates by reference the ALJ's summary of the medical evidence and Reusel's hearing testimony.[2]

---

[2] *See Biestek v. Comm'r of Soc. Sec.*, No. 16-cv-10422, 2017 U.S. Dist. LEXIS 47762, at *2-3 (E.D. Mich. Feb. 24, 2017) (adopting an ALJ's summary of medical evidence and hearing testimony), *adopted by* 2017 U.S. Dist. LEXIS 47209 (E.D. Mich. Mar. 30, 2017), *aff'd by* 880 F.3d 7787 (6th Cir. 2017),

Although not specifically cited or discussed in the ALJ's summary of the medical evidence, Dr. Singh's August 9, 2017 treatment notes are relevant to this case.  On that date, Reusel reported swollen elbows, minimal neck pain, mid and low back pain, shoulder pain, severe knee pain, wrist and hand swelling, left ankle swelling, and hip pain.  (Tr. 852).  Dr. Singh noted that chiropractic care did not help, and she was seeing physical therapist and pain management for her low back pain.  (Tr. 852).  He also noted that Reusel used albuterol for her shortness of breath.  (Tr. 852).  On examination, Dr. Singh indicated that Reusel's shoulders, elbows, wrists, hips, knees, hands, feet, and thoracic back had "normal" function.  (Tr. 853).  Reusel had decreased range of motion and tenderness in her cervical and lumbar spine.  (Tr. 853).  Dr. Singh also stated that there was swelling in Reusel's left ankle; calcific deposits in her elbows, right hand palm, and plantar foot; and effusion and redness in her elbows.  (Tr. 853).  Dr. Singh noted that all previous therapy had failed to resolve Reusel's Scleroderma and persistently draining open wounds in her elbows (with olecranon bursa), and that he wanted to use Revatio to treat the condition because Bosenthan Rituxan would be more expensive.  (Tr. 855).

On February 26, 2019, Reusel told Dr. Singh that she was going to wound care for a 2 cm ankle wound that had popped.  (Tr. 1465).  Dr. Singh noted that Reusel said her hands ached all the time, her toes were numb, her low back pain rated a 4 out of 10, and she could not sit or stand for more than 15 minutes.  (Tr. 1465).  On examination, Dr. Singh found that Reusel was fully oriented and well-developed.  (Tr. 1466).  She had normal heart and lung function.  (Tr. 1466).  Reusel had "normal" shoulders, elbows, wrists, hips, knees, ankles, cervical and thoracic back, hands, and feet.  (Tr 1466-67).  Dr. Singh indicated that Reusel had decreased range of motion in

---

*aff'd* by 139 S. Ct. 1148 (2019).  *See also Paulin v. SSA*, 657 F. Supp. 2d 939, 942 (M.D. Tenn. 2009); *Hase v. Colvin*, 207 F. Supp. 3d 1174, 1177 (D. Or. 2016).

3

her back.  (Tr. 1467).  Dr. Singh also stated, "Wrist hand tender Puffy[.]  Right elbow lesion non

oozy[.]  Left elbow lesion non healed[.]  Active Reynaud's Phenomenon[.]  Left ankle wound

dressed not examined[.]  Left submandibular gland swelling[.]  Dry and irritated palpebral

conjunctiva is noted.  There is also decrease saliva pooling noted."  (Tr. 1467).  Dr. Singh also

noted that Reusel's scleroderma had failed all treatment and that she might need a prostaglandin

infusion treatment.  (Tr. 1468).

### C.    Relevant Opinion Evidence

On October 7, 2017,[3] Dr. Singh completed a medical source statement form.  (Tr. 995-

96).  Citing "8/9/17 office visit," Dr. Singh indicated that Reusel could not lift or carry any

amount for any duration.  (Tr. 995).  Dr. Singh said that Reusel could stand/walk for up to 2

hours total and up to 15 minutes without interruption.  (Tr. 995).  Dr. Singh indicated that

Reusel's impairment did not affect her ability to sit, but also stated that she was limited to 4

hours of sitting in an 8-hour day.  (Tr. 995).  Citing "8/9/17 note," Dr. Singh said that Reusel

could frequently balance but never climb, stoop, crouch, kneel, or crawl.  (Tr. 995).  Also citing

"8/9/17 note," Dr. Singh indicated that Reusel was restricted from heights, moving machinery,

and temperature extremes.  (Tr. 995).  But Dr. Singh did not write anything under the prompt

which asked, "How do the checked restrictions affect the individual's activities?"  (Tr. 995).

Dr. Singh indicated that Reusel would be absent from work more than four days per month, off

task more than 20% of an 8-hour workday, and able to use her hands for less than 10% of an 8-

hour workday.  (Tr. 996).  Dr. Singh said that Reusel would need to lie down for 1 hour in the

course of an 8-hour day, and she would need more than four unscheduled work breaks beyond

---

[3] Reusel says that this opinion was issued on November 7, 2017.  ECF Doc. 16 at 8.  The index to the
administrative transcript also says it was issued on November 7, 2017.  (Tr. Index 3).  The Commissioner
and ALJ indicate that the opinion was issued on October 7, 2017.  (Tr. 31-32); ECF Doc. 17 at 4.  The
hand-written date on the opinion looks like "1c/7/17," so either reading makes sense.  (Tr. 996).

the regularly scheduled lunch, morning, and afternoon breaks.  (Tr. 996).  When prompted

"What are the medical findings which support your opinions?" Dr. Sing wrote: "Patient with

limited scleroderma with bilateral non healing olecranon bursitis complicated by septic bursitis.

Failed surgery."  (Tr. 996).

On April 16, 2019, Dr. Singh completed another medical source statement form.

(Tr. 1463-64).  Citing "2/26/19 visit note," Dr. Singh stated that Reusel could lift less than 5

pounds occasionally or frequently.  (Tr. 1463).  Dr. Singh said that Reusel could stand/walk for

up to 2 hours in an 8-hour day and up to 15 minutes without interruption.  (Tr. 1463).  Citing

"2/26/19 notes," Dr. Singh said Reusel could sit for up to 2 hours in an 8-hour day and up to

15 minutes without interruption.  (Tr. 1463).  Citing "2/26/19 visit notes," Dr. Singh said Reusel

could occasionally climb and balance, but she could never stoop, crouch, kneel, or crawl.

(Tr. 1463).  Citing "2/26/19 notes," Dr. Singh said that Reusel was restricted from heights and

moving machinery because her medication caused impaired balance, weakness, and dizziness.

(Tr. 1463).  Dr. Singh indicated that Reusel would be absent from work more than 4 days per

month, be off task for over 20% of the workday, need to lie down for 2 hours or more in a

workday, be able to use her hands for less than 10% of the workday, and require four breaks

beyond the normally scheduled work breaks.  (Tr. 1464).  When prompted "What are the medical

findings which support your opinions?" Dr. Sing wrote: "See 2/26/19 visit notes.  Scleroderma

not responding to all medical treatments."  (Tr. 1464).

### D.    Relevant Testimonial Evidence

Bruce Holderead, a vocational expert ("VE") testified at the May 1, 2019 ALJ hearing.

(Tr. 70-78).  The ALJ asked the VE whether there were any jobs that could be performed by a

hypothetical individual with Reusel's age, experience, and work history if she were able to perform light work, except:

> this individual would be limited to frequent use of foot controls or hand controls bilaterally. The individual would be limited to frequent handling or fingering bilaterally. The individual would be limited to occasional climbing of ramps and stairs but would never climb ladders, ropes, or scaffolds. And would be limited to frequent stooping, kneeling, crouching, or crawling. The individual would never be exposed to unprotected heights, hazardous machinery, or commercial driving. And would avoid concentrated exposure to humidity, to extreme cold or heat, or to dust, odors, fumes, or other pulmonary irritants. This individual would be limited to the performance of simple, routine tasks and simple, work-related decisions. And would be limited to frequent interactions with supervisors or coworkers [and the public]. And the individual would tolerate few changes in the routine work setting.

(Tr 73-74). The VE said that such an individual could not perform any of Reusel's past work, but she could work as a cashier II, sales attendant, or marker. (Tr. 74-75). The VE said that, if the above-described hypothetical individual were limited to sedentary work instead of light work, she would be able to work as an addresser, document preparer, or touch-up screener (printed circuit board assembly). (Tr. 75). If the individual described in the sedentary hypothetical were additionally limited to occasional use of hand controls, handling, or fingering, she would not be able to perform any jobs in the national economy. (Tr. 76-77). And if the individual described in the sedentary hypothetical would be off task for 20% of the workday, absent 3 times per month, and need to elevate her legs for 10 minutes out of every hour, she would not be able to work. (Tr. 77).

## III. The ALJ's Decision

On May 30, 2019, the ALJ issued a written decision denying Reusel's claims. (Tr. 15-29). The ALJ made the following paraphrased findings relevant to Reusel's arguments on judicial review:

Reusel has the RFC to perform sedentary work, except she can frequently use foot/hand controls bilaterally and frequently handle and finger bilaterally. She can occasionally climb ramps and stars, but never climb ladders ropes or scaffolds. She can frequently stoop, kneel, crouch, and crawl. No exposure to unprotected heights, hazardous machinery, or commercial driving. She must avoid concentrated exposure to humidity, extreme cold or heat, dust, odors, fumes, and other pulmonary irritants. She is limited to simple, routine tasks and simple work related decisions. She is limited to frequent interaction with supervisors, coworkers, and the general public and she can tolerate few changes in a routine work setting. The ALJ considered all symptom sin light of the objective medical and other evidence. (Tr. 19).

While she had a small calcific deposit on the palm of her right hand and multiple small open ulcers on the dorsum of her hand, neither would preclude use of her hand to frequently handle and finger, as only the small deposit on the palm would be affected by fingering and handling. (Tr. 24).

Although the ALJ considered Reusel's report of pain, she often rated her pain as 4 or 5 out of 10 and examinations did not show an inability to walk or stand for the period established in the RFC. Although her symptoms were chronic, examinations varied in regard to the severity of signs or symptoms alleged. Additionally, the claimant's scleroderma was referred to as limited and not indicative of severe systematic involvement. (Tr. 25).

While the ALJ considered Dr. Singh's opinion as a treating source, there was disparity in his assessments without supporting evidence. He limited Reusel to sitting 4 hours after noting sitting was not affected in his assessment on October 7, 2017 and assessed she would need to lie down for an hour. He opined that she could sit for 2 hours and would need to lie down 2 hours in his assessment in 2019. However, there is no explanation why the claimant was limited to 4 hours if sitting was not affected nor an explanation for limiting the claimant to sitting 2 hours without justification for the greater limitation. Additionally, Dr. Singh did not support his opinion that the claimant would be off tasks or need to lie down. While I give his opinion some weight to the extent Reusel could stand/walk 2 hours, I do not give his opinion controlling weight, as it is not supported by the evidence. (Tr. 26-27).

Dr. Singh noted that the claimant did not respond to treatment with methotrexate on October 19, 2018, and indicated that she was "not able to work secondary to her physical condition, is essentially disabled from her disease, and progressive downhill course." I give little weight to his opinion. A finding that an individual is "disabled" or "unable to work," is an administrative finding and is an issue reserved to the Commissioner. (Tr. 27).

Based on these findings and the VE's testimony, the ALJ found that Reusel was not disabled from June 2, 2015, through the date of his decision and denied Reusel's claims.  (Tr. 29).

IV.    **Law & Analysis**

    A.    **Standard of Review**

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied.  42 U.S.C. §§ 405(g), 1383(c)(3); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is not a high threshold for sufficiency.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'"  *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. Aug 7, 2020) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)).  Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence.  *Jones*, 336 F.3d at 476.  And "it is not necessary that this court agree with the Commissioner's finding," so long as it meets this low standard for evidentiary support.  *Rogers*, 486 F.3d at 241; *see also Biestek*, 880 F.3d at 783 ("It is not our role to try the case de novo." (quotation omitted)).  This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court.  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court cannot uphold that decision if the Commissioner failed to apply proper legal standards, unless the legal error was

harmless.  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) ("Generally, . . . we review decisions of administrative agencies for harmless error.").  Furthermore, the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-CV-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue*, No. 2:10 CV 017, 2010 U.S. Dist. LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-CV-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).  Requiring an accurate and logical bridge ensures that a claimant, as well as a reviewing court, will understand the ALJ's reasoning.

The Social Security regulations outline a five-step process the ALJ must use to determine whether a claimant is entitled to benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Combs v. Comm'r*

*of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).  Although it is the Commissioner's obligation to produce evidence at Step Five, the claimant bears the ultimate burden to produce sufficient evidence to prove that she is disabled and, thus, entitled to benefits.  20 C.F.R. §§ 404.1512(a), 416.912(a).

> B.      **Dr. Singh's Opinions**

Reusel argues that the ALJ failed to apply proper legal standards because he did not adequately explain why he discounted Dr. Singh's opinions.  ECF Doc. 16 at 18-21, 24-25. Specifically, Reusel asserts that the ALJ's reasons for discounting Dr. Singh's opinions – that there was a "disparity" in his assessments and his assessments weren't supported by evidence – were not good reasons for discounting the opinions because the ALJ did not explain *what* the disparity was or *why* the opinion was not supported by evidence.  ECF Doc. 16 at 18, 20-21. Further, Reusel argues that (although the he addressed Dr. Singh's sitting, standing/walking, off-task, and lying down limitations) the ALJ did not explain why he discounted Dr. Singh's other limitations – including, among other things, Dr. Singh's opinion that Reusel couldn't use her hands for more than 10% of an 8-hour workday.  ECF Doc. 16 at 20-21; *see also* (Tr. 996). Reusel contends that this lack of explanation resulted in a failure to build an accurate and logical bridge between the evidence and the result.  ECF Doc. 16 at 24-25.  Reusel also argues that the ALJ's conclusion that Dr. Singh's limitations were unsupported was not supported by substantial evidence.  ECF Doc. 16 at 21-25.  Specifically, Dr. Singh's opinions pointed to: (1) August 2017 treatment notes indicating that Reusel had ulcerations of her digits and draining effusions due to poorly healing skin, swelling and calcific deposits in her extremities, decreased range of motion in her spine, and Raynaud's phenomenon; (2) February 2019 treatment notes showing "nasty" popping in her ankle, spine pain, shoulder pain, knee pain, numbness and aching in her hands

and feet, fatigue, and shortness of breath.  ECF Doc. 16 at 21-22.  Reusel says that other

evidence in the record (especially treatment notes and Reusel's own statements indicating that

her hand condition worsened from 2016 through 2018 and was characterized by pain, swelling,

calcific deposits, weakness, numbness, and ulcerations) also supported Dr. Singh's opinions.

ECF Doc. 16 at 21-24 (citing (Tr. 54-56, 66-68, 570, 573, 578, 584, 843, 861, 975, 1009, 1011,

1021, 1097, 1099, 1216, 1218, 1242); *see also* ECF Doc. 18 at 6-7.  Reusel asserts that the ALJ's

failure to give greater weight to Dr. Singh's hand limitation was not harmless because the VE

said that such a limitation would preclude all work at the sedentary level.  ECF Doc. 16 at 24.

The Commissioner responds that the ALJ provided good reasons for discounting the

weight given to Dr. Singh's opinions, including that the opinions were internally inconsistent,

and that Dr. Singh did not provide any support.  ECF Doc. 17 at 8.  The Commissioner argues

that the ALJ's reasons were supported by substantial evidence because Dr. Singh's opinions

were on checklist forms, he only provided a single reference to a treatment note, and he did not

identify objective medical evidence supporting the degree of limitations included in his opinions.

ECF Doc. 17 at 9.  The Commissioner asserts that the ALJ's explanation was sufficient, and he

was not required to provide a line-by-line analysis of Dr. Singh's opinions.  ECF Doc. 17 at 9-

10.  Nevertheless, the Commissioner contends that the ALJ separately addressed Reusel's joint

issues, swelling, decreased range of motion, and calcific deposits in assessing the medical

opinion evidence and evaluating her RFC.  ECF Doc. 17 at 10-11.  Further, the Commissioner

argues that the ALJ's decision to discount Dr. Singh's opinion was supported by substantial

evidence, and Reusel's disagreement is not a valid reason to overturn the ALJ's decision.  ECF

Doc. 17 at 11-12.

In her reply brief, Reusel argues that the ALJ's reasons for discounting Dr. Singh's opinions focused only on his October 2017 opinion and not the April 2019 opinion, which contained no disparity or internal inconsistency. ECF Doc. 18 at 1. Reusel contends that the ALJ did not even address Dr. Singh's April 2019 opinion, despite summarizing it. ECF Doc. 18 at 3-6. Reusel also asserts that Dr. Singh's opinion was not inconsistent with other evidence in the record, and Dr. Singh provided support for his opinions. ECF Doc. 18 at 2-3. Further, Reusel adds that the ALJ did not explain why some of the limitations in Dr. Singh's opinion were adopted while others were not and that the Commissioner's arguments are improper *post hoc* rationalizations. ECF Doc. 18 at 4-5, 7.

At Step Four, an ALJ must weigh every medical opinion that the Social Security Administration receives. 20 C.F.R. §§ 404.1527(c), 416.927(c). An ALJ must give a treating source opinion controlling weight, unless the opinion is: (1) not "supported by medically acceptable clinical and laboratory diagnostic techniques"; or (2) inconsistent with finding in the treating source's own records or other medical evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 786 (6th Cir. 2017). And, if the ALJ finds either prong justifies giving the treating source opinion less-than-controlling weight, he must articulate "good reasons" for doing so – *i.e.*, explain which prong justifies that decision. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); *Biestek*, 880 F.3d at 786. The ALJ must also explain what non-controlling weight (if any) was given to the opinion based on: (1) the length and frequency of treatment; (2) the supportability of the opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the treating physician is a specialist; (5) the physician's understanding of the disability program and its evidentiary requirements; (6) the physician's familiarity with other information in the record;

and (7) other factors that might be brought to the ALJ's attention.  *See Gayheart*, 710 F.3d at 376; 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).[4]

Ultimately, the ALJ must provide sufficient explanation for the claimant and any reviewing court to be able to "trace the path of his reasoning."  *Stacy v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011); *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 643 (6th Cir. 2013) (holding that an ALJ erred when he stated that an examining physician's tests were invalid without explaining why they were invalid).  This does not require the ALJ to explain piecemeal how he considered each of the regulatory factors.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Biestek*, 880 F.3d at 786 ("The ALJ need not perform an exhaustive, step-by-step analysis of each factor.").  Further, the ALJ is not required to package his explanation into a single, tidy paragraph because the decision is read "as a whole and with common sense." *Buckhanon ex rel. J.H. v. Astrue*, 368 F. App'x 674, 678-79 (7th Cir. 2010); *accord Gayheart*, 710 F.3d at 376.

The ALJ's explanation of how he weighed Dr. Singh's October 2017 and April 2019 opinions[5] certainly left a lot to be desired, but it did meet the low bar to survive "proper legal standards" review.  42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241.  The ALJ complied with the regulations by providing three reasons for declining to give Dr. Singh's opinions controlling

---

[4] On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017.  *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017).  Because Duffield filed her claims on February 9, 2017 and March 9, 2017, the pre-March 27, 2017, regulations apply to this case.

[5] Reusel does not specifically challenge the ALJ's rejection of Dr. Singh's October 19, 2018 opinion that she was "not able to work secondary to her physical condition [and] is essentially disabled from her disease."  (Tr. 24, 27, 1102); *See generally* ECF Doc. 16; ECF Doc. 18 (challenging only the weight given to the October 7, 2017 and April 16, 2019 opinions).  Thus, any such challenge is forfeited.  *Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517 (6th Cir. 2010).  Nevertheless, the ALJ properly explained that he rejected that statement as an opinion on an issue reserved for the Commissioner.  (Tr. 27); 20 C.F.R. §§ 404.1527(d), 416.927(d) (an ALJ is *not permitted* to give any weight to a statement that a claimant is "disabled" or "unable to work").

13

weight: (1) that there was an unexplained disparity between the sitting and lying down limitations in the opinions; (2) that Dr. Singh's failed to support his off-task and lying down limitations; and (3) that the opinions overall were "not supported by the evidence."[6]  (Tr. 26-27). These were "good reasons."  *See Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 118 (6th Cir. 1994) (indicating that an ALJ may discount an opinion when it contradicts an earlier opinion by the same physician without explanation); *Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes."); 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) (supportability, consistency, and "other factors").  And the ALJ properly explained that he gave "some weight" to Dr. Singh's opinions and that he specifically adopted the standing/walking limitations into the RFC finding by limiting Reusel to sedentary work.  (Tr. 19, 27).  The necessary implication here – when reading the ALJ's decision as a whole and with common sense, *see Buckhannon*, 368 F. App'x at 678-79 – is that: (1) the ALJ found the reasons he gave for discounting the opinions did not apply to the standing/walking limitations; and (2) he didn't give *any weight* to the other limitations in Dr. Singh's opinions because the reasons he identified for discounting those opinions (most

---

[6] From an accuracy-of-diction standpoint, the ALJ's statement that Dr. Singh's opinion was "not supported by the evidence" treads dangerously close to mixing up "supportability" and "inconsistency." Strictly speaking, "supportability" concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence.  *See* SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); *see also* 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations).  Here, the context makes clear that when the ALJ said Dr. Singh's opinions were "not supported *by the evidence*" (emphasis added), he meant that "the evidence [in the record]" was *inconsistent* with Dr. Singh's opinions.  *Compare* (Tr. 27) ("Dr. Singh did not support his opinion" regarding off-task behavior and lying down – a "supportability" finding evaluating what Dr. Singh said he based his opinion on), *with* (Tr. 27) ("it is not supported by the evidence" – an "inconsistency" finding comparing the opinion to the evidence as a whole).  In any event, the law does not require ALJ's to use perfect diction, but only that ALJs provide enough context for the court to trace their reasoning.  *Stacy*, 451 F. App'x at 519.  And, here, the court can do so.  This was plainly an inconsistency finding.

notably that the opinions were "not supported by the evidence") *did apply* to those limitations. (Tr. 26-27).

In explaining his weight determination, the ALJ did not fail to address Dr. Singh's April 2019 opinion as Reusel contends.  ECF Doc. 18 at 3-6.  Instead, the ALJ specifically explained that Dr. Singh had not provided any explanation for the disparity (*i.e.*, the change in assessed limitations) between: (1) his internally inconsistent October 2017 opinion that Reusel's condition had no effect on her sitting yet she was nevertheless limited to four hours of sitting, and that she had to lie down for one hour a day; and (2) his April 2019 opinion that Reusel was limited to two hours of sitting and had to lie down for two hours a day.  (Tr. 26-27).  The Sixth Circuit has held that a disparity between a single physician's earlier and later opinions is a valid reason for discounting that physician's opinions.  *See Stanley*, 39 F.3d at 118 (6th Cir. 1994) (indicating that an ALJ may discount an opinion when it contradicts an earlier opinion by the same physician without explanation).  And pointing to this disparity satisfied the ALJ's duty to explain his decision.  *Stacy*, 451 F. App'x at 519; *Brooks*, 531 F. App'x at 643; *Biestek*, 880 F.3d at 786.

The court does take pause at Reusel's arguments that the ALJ didn't adequately address each of the limitations set out in Dr. Singh's opinions – especially with regard to Dr. Singh's repeated opinions that she couldn't use her hands for more than 10% of the workday.  *See* (Tr 966, 1464).  Given the nature of the evidence in the record, the court would have expected the ALJ to address discretely how he treated Dr. Singh's hand limitations.  And, if this court were to review the case *de novo*, it might be inclined to remand for the ALJ to consider further Dr. Singh's hand limitations.  But this court doesn't review social security decisions *de novo*. *Biestek*, 880 F.3d at 783.  It's applies a much, much lower bar than that. *Id.*; *Rogers*, 486 F.3d at 241 (discussing the "low standard").

An ALJ isn't required to discuss each limitation from an opinion (or opinions) that he rejects on broader grounds.  *See Ellsworth v. Comm'r of Soc. Sec.*, No. 3:15-cv-2173, 2016 U.S. Dist. LEXIS 188390, at *36 (N.D. Ohio, Aug. 5, 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004), for the proposition that an ALJ isn't required to discuss each piece of evidence in the record, and *Fleischer*, 774 F. Supp. 2d at 881, for the proposition that an ALJ need only provide enough explanation for why medical opinion limitations contradicting the RFC weren't incorporated into it).  As discussed above, the ALJ's general statement that Dr. Singh's opinions were "not supported by the evidence" (coupled with his express adoption of Dr. Singh's standing/walking limitations) was broad enough to explain the ALJ's rejection of each limitation not expressly addressed – including the hand limitation.  *See Buckhannon*, 368 F. App'x at 678-79 (ALJ decisions are read as a whole and with common sense).  Moreover, review of the ALJ's decision as a whole, demonstrates that the ALJ specifically rejected handling limitations greater than frequent handling after discussing all the evidence in the record.  *Buckhannon*, 368 F. App'x at 678-79.  Specifically, nested within the ALJ's summary of the medical evidence, the ALJ explained that the small calcific deposit on Smith's right palm and small dorsum (back of hand, opposite the palm) ulcers wouldn't preclude frequent handling and fingering because only the small deposit on the hand would be affected by handling and fingering.  (Tr. 24).

Certainly, the ALJ's explanation for why he discounted Dr. Singh's opinions (including *all* the limitations not specifically adopted) wasn't perfect and could have been better drafted. But it didn't need to be.  The ALJ's explanation was sufficient for the court to track his reasoning.  And that's all the regulations require.  *Stacy*, 451 F. App'x at 519; *Brooks*, 531 F. App'x at 643; *Biestek*, 880 F.3d at 786.  Thus, Reusel has not met her burden to show that the

ALJ failed to apply proper legal standards in evaluating Dr. Singh's opinions.  42 U.S.C.
§ 405(g); *Rogers*, 486 F.3d at 241.

      Substantial evidence also supported the ALJ's reasons for discounting Dr. Singh's
opinions.  42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241.  The sitting limitations in the October
2017 and April 2019 were different, and Dr. Singh did not explain that difference in his April
2019 opinion.  (Tr. 26-27); *Compare* (Tr. 995), *with* (Tr. 1463); *Stanley*, 39 F.3d at 118.
Dr. Singh also did not specify any treatment notes (clinical/diagnostic techniques, procedures, or
objective findings) that supported the off-task and lying down limitations in his opinions.  (Tr.
996, 1464).  Dr. Singh did cite his August 9, 2017 and February 26, 2019 treatment notes as
general support for his opinions, but: (1) those notes did not clearly reflect upon Reusel's ability
to stay on task or need to lie down; and (2) he didn't explain how those notes reflected such
limitations.  *Compare* (Tr. 852-55, 1465-68), *with* (Tr. 996, 1464).

      Evidence also supported the ALJ's finding that Dr. Singh's opinions were inconsistent
with (or "not supported by") other evidence in the record, including: (1) 2015 examination
findings showing normal gait, an ability to sit and stand easily, no evidence of lumbar
radiculopathy, "age appropriate" degenerative changes in the spine, normal strength and
flexibility, and an ability to work full duty, (Tr. 20, 370-74, 383-84); (2) 2016 examination
findings showing no swelling or tenderness in hands and lower extremities, improved flexibility
and strength after physical therapy, good symptom relief from treatment of her COPD, normal
musculoskeletal function, the ability to bear weight, and no joint locking, swelling, or numbness,
(Tr. 21-22, 548, 566, 597, 600-01, 755-57, 763-764); (3) 2017 examination findings showing
normal gait, 5/5 strength in upper and lower extremities, clear lungs, no erosive changes or soft
tissue calcifications, an ability to manage weight on a table, an ability to heel-to-toe walk, and

17

improvement with chiropractic care, (Tr. 22-23, 709, 730, 839-42); (4) 2018 findings that Reusel's elbow wound was healed, that the calcific deposit on her hand was small, and that the calcific deposit on her foot was superficial, (Tr. 24, 1097-1100); (5) 2019 notes that antibiotics had improved Reusel's wounds and that she reported feeling better, (Tr. 24, 1115); (6) that Reusel went from reporting 7 out of 10 pain in 2017 to 5 out of 10 in 2018 and 4 out of 10 in 2019, (Tr. 21, 24-25, 763-64, 1097-1100, 1465-67); and (7) Dr. Singh's own findings from August 9, 2017 and February 26, 2019 examinations, showing that Reusel had "normal" shoulders, elbows, wrists, hips, knees, ankles, cervical and thoracic back, hands, and feet, (Tr. 853, 1466-67). *Biestek*, 139 S. Ct. at 11554.

Reusel is correct that other evidence – a lot of evidence – in the record was also *consistent* with Dr. Singh's opinions and could have supported a conclusion that Dr. Singh's opinion was due greater weight. *See* (Tr. 21-25) (citing Tr. 40-70, 363, 518-20, 548, 555, 579, 582, 584, 588, 590, 597, 600-01, 661, 754-55, 763-64, 793, 839-40, 842, 861-63, 968-72, 997-98, 1009, 1011, 1097-1100, 1102, 1260, 1465-67).  But even if *the majority* of the evidence would have supported a different conclusion and even if this court might have reached a different conclusion if reviewing the claim *de novo*, the court is not permitted to decide the facts anew or re-weigh the evidence when the ALJ's decision met the low substantial-evidence standard. *O'Brien*, 819 F. App'x at 416; *Jones*, 336 F.3d at 476-77; *Rogers*, 486 F.3d at 241; *Biestek*, 880 F.3d at 783.  Thus, because substantial evidence supported the ALJ's decision to give only "some" weight to Dr. Singh's opinions, that decision fell within the Commissioner's "zone of choice" and cannot be second-guessed by this court. *Mullen*, 800 F.2d at 545.

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence in weighing Dr. Singh's opinions, the ALJ's decision to give discounted weight to Dr. Singh's opinion must be AFFIRMED.

### C.    Handling & Fingering Limitation Omitted from RFC

Reusel also argues that she believes the ALJ erred by failing to include in his ultimate RFC that she was limited to occasional use of hand controls, handling, and fingering bilaterally. ECF Doc. 16 at 24.  Reusel asserts that the ALJ included this limitation in his hypothetical to the VE, and the VE said that such a limitation would preclude all sedentary work.  ECF Doc. 16 at 24.  She also contends that this limitation was supported by Dr. Singh's opinion.  ECF Doc. 16 at 24.  But the ALJ did not explain why he did not include it in his ultimate RFC finding.  ECF Doc. 16 at 24.

The Commissioner responds that the ALJ adequately considered Reusel's symptoms in finding that she was able to perform frequent handling and fingering.  ECF Doc. 17 at 10. Further, the Commissioner argues that the ALJ was not required to adopt the limitations from Dr. Singh's opinion when he properly discounted the weight given to that opinion because the RFC finding is an issue reserved to the Commissioner.  ECF Doc. 17 at 11-12.

As indicated above, at Step Four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The RFC is an assessment of a claimant's ability to do work despite her/his impairments.  *Walton v. Astrue*, 773 F. Supp. 2d 742, 747 (N.D. Ohio 2011) (citing 20 C.F.R. § 404.1545(a)(1) and SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996)).  "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  SSR 96-8p, 1996 SSR LEXIS 5.  Relevant

evidence includes a claimant's medical history, medical signs, laboratory findings, and statements about how the symptoms affect the claimant.  20 C.F.R. §§ 404.1529(a), 416.929(a); *see also* SSR 96-8p, 1996 SSR LEXIS 5.  So long as the ALJ's RFC determination considered the entire record, the ALJ is permitted to make necessary decisions about which medical findings to credit and which to reject in determining the claimant's RFC.  *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 587 (6th Cir. 2013) (unpublished) ("The ALJ parsed the medical reports and made necessary decisions about which medical findings to credit, and which to reject. Contrary to [the claimant's] contention, the ALJ had the authority to make these determinations.").  "[T]here is no requirement that an ALJ adopt [a medical source's] limitations wholesale."  *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).

The ALJ applied proper legal standards and reached a decision supported by substantial evidence when his RFC finding did not limit Reusel to occasional use of hand controls, handling, and fingering.  42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241.  Here, the ALJ complied with the regulations by considering all of Reusel's symptoms in light of all the objective medical evidence and other evidence in the record.  (Tr. 19-29); 20 C.F.R. §§ 404.1520(e), 416.920(e); SSR 96-8p, 1996 SSR LEXIS 5.  In doing so, the ALJ specifically explained that the small calcific deposits and ulcers on her hands would not preclude her from frequent handling and fingering.  (Tr. 24)  The ALJ was not required to adopt any particular limitations from Dr. Singh's opinions, especially when the ALJ explained that Dr. Singh's opinions were due only "some weight" because other evidence in the record didn't support them.  (Tr. 26-27); *Justice*, 515 F. App'x at 587; *Reeves*, 618 F. App'x at 275.  Moreover, evidence supported the ALJ's decision to limit her to only frequent use of hand controls, handling, and fingering, including: (1) treatment findings that Reusel had normal musculoskeletal function, full strength,

and could manage weight on a table, (Tr. 370, 566, 597, 600-01,  709, 730, 755-57, 763-64, 839-40); (2) Dr. Singh had described her calcific deposits as "small" and indicated that her ulcers had healed in October 2018, (Tr. 1097-1100); and (3) Dr. Bolz and Dr. Knierim indicated that Reusel was able to frequently handle, (Tr. 92-95, 97, 131-33, 136).  *Biestek*, 139 S. Ct. at 11554.

Because the ALJ applied proper legal standards and substantial evidence supported his decision to limit Reusel to *frequent* (rather than *occasional*) use of hand controls, handling, and fingering, that decision fell within the Commissioner's "zone of choice" and cannot be second-guessed by this court.  *Mullen*, 800 F.2d at 545.  Accordingly, the ALJ's decision not to include in the RFC greater handling and fingering limitations must be AFFIRMED.

## V.      Conclusion

Because the ALJ applied proper legal standards and reached a decision supported by substantial evidence, the Commissioner's final decision denying Reusel's applications for DIB and SSI is AFFIRMED.

**IT IS SO ORDERED.**

Dated: April 29, 2021

Thomas M. Parker
United States Magistrate Judge